IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| RONALD AUGUSTINE PLASKETT, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | |
| § | CIVIL ACTION NO. _____ |
| § | |
| PEMEX INCORPORATED AND § | JURY DEMANDED |
| SHELL LLC, § | |
| Defendants, § | |

PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE U.S. DISTRICT JUDGE:

NOW COMES, Plaintiff, RONALD AUGUSTINE PLASKETT ("Plaintiff" or "Mr. Plaskett"), complaining of and about Defendants, PEMEX INCORPORATED ("Pemex") and Shell LLC ("Shell"), and for cause of action files this Plaintiff's Original Complaint, showing to the Court as follows:

## I.  PARTIES AND SERVICE

1. Plaintiff, Ronald Augustine Plaskett, is a citizen of the United States and the State of Texas.

2. Defendant Pemex Incorporated is a Company under the laws of Texas. At all times pertinent to this case, Plaintiff was employed by Pemex. Pemex Incorporated holds its usual place of business at 11732 Great Oak Blvd. Conroe, TX 77385 USA. Pemex can be served through registered agent Daniel Giron at 7526 Cavesson Dr. Cypress, TX 77433 USA.

3. Defendant Shell LLC is a Company under the laws of Texas. At all times pertinent to this

case, Plaintiff was employed by Shell. Shell LLC holds its usual place of business at 11732 Great Oak Blvd. Conroe, TX 77385 USA. Shell can be served through registered agent Larry Morris at 327 N Turks Cap TRL Montgomery, TX 77316 USA.

## II.　JURISDICTION AND VENUE

4.　This Court possesses jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff's claims are grounded in federal law: allegations of religious and race discrimination, and a hostile work environment, subjected to unconstitutional practices contravening Title VII of the Civil Rights Act of 1964; and retaliation under Title VII of the Civil Rights Act of 1964 (as amended), which is enshrined in 42 U.S.C. §§ 2000e-3(a) and 2000e-2(a) respectively.

5.　The venue is proper in this district under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this district. Pemex and Shell, where Mr. Plaskett was employed and where the alleged discriminatory practices took place, are located within this district.

## III.　NATURE OF ACTION

6.　This is an action brought by Plaintiff against Defendant initiated under the provisions of Title VII of the Civil Rights Act of 1964 and Chapter 21 of the Texas Labor Code for allegations of racial and religious discrimination and hostile work environment. The purpose of this action is to rectify and obtain redress for the Defendant's unlawful employment practices of religious and race discrimination, retaliation and a hostile work environment. Plaintiff suffered harassment based solely on his race and religion that affected a term, condition, or privilege of his employment when Defendant failed to promote Plaintiff because of his race and religion, therefore, this lawsuit is being filed to prevent Defendant from perpetuating such discriminatory

practices.

7.      Mr. Plaskett's suffered from persistent muting in work meetings due to his Rastafarian religious practices, is a clear violation of Title VII, which prohibits employers from making an employee's religious practice a factor in employment decisions. Rastafarianism is a recognized religion. Therefore, the muting of Mr. Plaskett in meetings based on his religious beliefs is a clear violation of these legal principles.

8.      Mr. Plaskett has established a *prima facie* case of racial discrimination under the burden-shifting framework. He has been overlooked for opportunities due to his racial and religious background, which is a clear violation of Title VII and Chapter 21 of the Texas Labor Code. Mr. Plaskett has engaged in protected activity by asserting his rights under Title VII and Chapter 21 to be free from racial and religious discrimination.

9.      Defendant's failure to promote Mr. Plaskett, despite his qualifications and performance, and the persistent muting of Mr. Plaskett in work meetings due to his Rastafarian religious practices, constitute adverse employment actions. These actions were taken in retaliation for Mr. Plaskett's assertion of his rights, thereby violating Title VII and TCHRA. Mr. Plaskett has established a *prima facie* case for a hostile work environment under Title VII. The plaintiff can show that the environment would reasonably be perceived, and is perceived, as hostile or abusive. Mr. Plaskett's ongoing muting in meetings and overlooked opportunities demonstrate these conditions.

### IV.     CONDITIONS PRECEDENT

10.     The law allows individuals who have been discriminated against to file a lawsuit in federal court. This action is under Title VII of the Civil Rights Act of 1964, and Chapter 21 of

the Texas Labor Code.

11. On January 5, 2024, Plaintiff dual-filed multiple Charges of Discrimination No. 460-2024-02271 (Pemex) and 460-2024-02272 (Shell) with the U.S. Equal Employment Opportunity Commission (hereinafter referred to as the "EEOC") and the Texas Workforce Commission (hereinafter referred to as the "TWC") against Defendant for racial and religious discrimination, hostile work environment, and retaliation.

12. Subsequently, the EEOC issued Plaintiff a Notice of Right to Sue, received by Plaintiff on January 30, 2024. Plaintiff now files this lawsuit within ninety (90) days of receiving the Right to Sue notices. Therefore, this lawsuit is timely filed.

## V.   FACTS

13. From the period of 2016, during the tenure of Shell, to February 2023, now under the purview of PEMEX, Plaintiff Mr. Plaskett endured a challenging time where Obie Harris and Andy Castiglione persistently thwarted his professional advancement, exposing him to discrimination, harassment, and public indignity.

14. As a committed Process Operator, Mr. Plaskett observed firsthand the changes when Shell divested its 50% interest to its partner, Pemex. Despite the transition in ownership, the echelons of management persisted with little to no alteration. The same cadre of leadership, that Mr. Plaskett identifies as enablers, continued to foster an oppressive atmosphere that inhibited his career development.

15. On November 10, 2016, Plaintiff filed his first original EEOC complaint. The corporate response from SHELL was punitive; they reassigned Mr. Plaskett from his role in the Distilling Department to the Chemical Department without justification, a clear infraction of the Collective

Bargaining Agreement. Even if Plaintiff's, pay remained unchanged, the progression of his incentives was delayed, which would have resulted in an additional $1.00 per hour added to his regular pay rate. This increase was contingent upon his eligibility to begin training for my third job in the Distilling Department. Typically, having qualifications for three or more jobs would earn an additional $1.00 to $3.00 per hour. At the time, Plaintiff had qualifications for two jobs but lost both Distilling qualifications upon being transferred to the Chemical Department, where he had to start anew.

16. It's important to note that this reassignment from the Distilling Department to the Chemical Department violated the terms of the CBA contract. The individuals responsible for this retaliatory action were Obie Harris (superintendent), Andy Castiglione (manager), and Crystal Lovelady (HR). During a meeting with Andy Castiglione, he explicitly stated, "Since you filed the EEOC charge, I'm going to move you to the Chemical Dept. because they need a good operator." In response to this violation, Plaintiff filed a grievance to address the breach of the CBA contract.

17. Nevertheless, in 2019, Mr. Plaskett secured a position back in the Distilling Department by applying through an internal job posting. This was thwarted for over a year. Chemicals refused to release Plaintiff back to Distilling even after winning the job poster back. Due to this issue he filed numerous grievances. This willful interfering act was performed by Obie Harris, Andy Castiglione, Ricky Yzquierdo (chemicals superintendent) and Kirk Miller (chemicals manager). This again was another form of retaliation.

18. During the timeframe from December 2018 to January 2019, Mr. Plaskett undertook extensive job training, successfully completing three significant job assignments within an

*Plaintiff's Original Complaint*                                                                                        Page **5** of **19**

impressively brief interval. Yet, when Mr. Plaskett sought to confer with Obie Harris regarding a pay increase commensurate with his newly acquired competencies, he encountered rejection. This refusal precipitated Mr. Plaskett to file a grievance in 2020. Other employees in the same position under Obie who received pay increases belong to White, Hispanic, and Arab collectives.

19. Additionally, since 2019, Mr. Plaskett has been persistently overlooked by Obie Harris for critical training opportunities, especially in console operations, while coworkers such as Eulalio Gonzalez (Hispanic), Ender Holland (White), and Jason Bryars (White), despite their lesser seniority and lack of success in completing console training, were preferentially given chances that were withheld from him. Moreover, Mr. Plaskett's interest in ascending to higher-paying roles like HR17 (PTL, OMC, etc.) was continuously ignored, with Mr. Harris favoring other individuals, notably Steven Fechner (White), Eulalio Gonzalez (Hispanic), Rosita Johnson (Hispanic), Abraham Juju (Arabic), Miguel Herrera (Hispanic), and Mario Rivera (Hispanic), neither of them professed Rastafarian religious practices.

20. These events mark a recurrent theme: Mr. Plaskett's ambitions for career growth were systematically obstructed by Obie Harris, denying him equitable training and promotional opportunities within the company.

21. A notable incident unfolded on July 18, 2022, in a full staff meeting where Obie Harris used profane language directed at Mr. Plaskett in front of their manager, Steve Jones. Mr. Plaskett's immediate grievances were initially met with inaction from the manager, who only addressed the issue when pressed about the behavior that contradicted company values. Disillusioned by the absence of managerial intervention, Mr. Plaskett's attempts to escalate the matter to HR were also neglected, prompting him to file a grievance. Hereafter, Manager Steve

Jones conceded that Mr. Harris's conduct was at odds with the company's principles, admitting that Mr. Harris had unreasonably lost his temper.

22. On or about October 21, 2022, Mr. Plaskett received an email from Obie Harris, commending an associate on their promotion—this act set the stage for what Mr. Plaskett views as a calculated attempt by Harris and his associate, Gene Maples, to instigate an HR investigation with the aim of terminating his employment. Nonetheless, the inquiry headed by Insperity HR Investigator Melissa Choo Valentina cleared Mr. Plaskett of any breaches of policy in relation to his email reply.

23. During the probe, Mr. Plaskett courageously disclosed the prolonged harassment, discrimination, and religious prejudice he endured at the hands of Obie Harris and Gene Maples, which gravely affected his emotional well-being and led to the pursuit of psychological counseling. Despite assurances from the investigator, it came to light that many witnesses Mr. Plaskett provided were not approached. He also provided proof of the banter and memes that circulated through his work area, marking him as the laughing stock.

24. In February 2023, an email from Steve Jones informed Mr. Plaskett of the intended removal of Obie Harris from their department. It was later revealed, though, that Mr. Harris remained until he procured a lateral transfer to the Turnaround Planning department. Mr. Plaskett views this action as insufficient considering the gravity of his allegations.

25. Even after presenting ample evidence and credible testimonies, it appears both Shell and PEMEX have failed to sufficiently reprimand Obie Harris, perpetuating a detrimental work climate and stripping Mr. Plaskett of the respect, dignity, and just opportunities he is due.

26. Since the departure of Obie Harris from our department in February 2023, Mr. Plaskett has observed a significant improvement in the workplace environment. Despite this progress, a recent issue has transpired where he believes an injustice has been committed regarding a missed opportunity for a temporary assignment that could have led to higher earnings. Specifically, Mr. Plaskett was passed over for an assistant role pertinent to the impending Turnaround in his department.

27. Mr. Plaskett asserts that despite being well-qualified and after having trained a more senior colleague who was newly eligible for such an assignment, he was disregarded for the position. What compounded this oversight was the absence of an official job posting, which deprived potential applicants of the chance to apply or to assert their eligibility rights. The colleague whom Mr. Plaskett had trained, and who had only just met the qualifying criteria, was rapidly allocated the Temporary Turnaround assignment in defiance of standard protocol. Notably, company rules stipulate that employees must independently perform in their new role for a 28-day period before assuming additional duties. Yet, this newly trained colleague did not fulfill this prerequisite and was nevertheless rewarded with the Turnaround role.

28. Had the training protocol been adhered to, along with the compliance to the guidelines mandated by our Collective Bargaining Agreement contract for temporary assignments, Mr. Plaskett contends that it would have been he who merited the Temporary Turnaround Assistant role. This role would be filed in December 2023 by another employee.

29. This occurrence prompts him to speculate on whether training regulations were selectively bypassed to benefit particular individuals, especially considering Obie Harris's

current position within the Turnaround Planning Department. This role included a raise of above 10% Plaintiffs current rate and pay.

30. The overt exclusion that Mr. Plaskett has experienced based on his race and religion strikes at the core of fair workplace treatment, impacting not only his prospects but also reflecting on the organization's commitment to equitable practices. Ignoring established training guidelines not only diminishes the individual's qualifications and hard work but also cultivates a culture of disparity and perceived bias.

31. Indicative of a broader pattern, despite Mr. Plaskett's qualifications and experience, he repeatedly encounters barriers to advancements, which others less qualified seemingly hurdle with ease. This recurrent inequity fuels an atmosphere of discrimination and resentment within the work climate.

32. For any organization, it is imperative to maintain equitable standards and afford equal opportunities based on merit and qualifications. Breaches of these principles can deteriorate employee morale and question the fidelity of company policies.

33. The rapid promotion of a recently trained and relatively inexperienced colleague [WHO], bypassing training guidelines, raises concerns. Observing instances of favoritism, potentially exemplified by assignments like that received by Obie Harris, perpetuates a narrative of unfair practices and bias. Addressing such discrimination and fostering an inclusive work environment are pivotal. Ensuring that opportunities are granted based on merit is a cornerstone ethic that any reputable entity must uphold.

34. Plaintiff applied to the following positions, and showcased the following qualification:

a. HR-17 (2015 – 2023), Temp. OMC (2015 – 2022), Temp. Field Safety Specialist (2016), A- permit writer class (2015 – 2020), Console training and Console (2015-2022), Temp. Turnaround coordinator (2023- 2024). HR-17 was filled on many different occasions ranging from 2015 – 2023. Temp. OMC was filled twice in 2015 and 2016/2017. Console training and Console was filled 2015 – 2022. Temp. Field Safety Specialist was filled in 2016. A- permit writer class was filled in 2015 – 2020. Temp Turnaround coordinator was filled in 2023.

b. HR-17 pay increase is 10% above the normal pay rate. Temp. The turnaround coordinator is 10% above the normal pay rate. Temp. Field Safety Specialist was 10% above the normal pay rate. Temp. OMC is 10% above the normal pay rate. Console training and Console was about $3.00 - $4.00 added to the normal pay rate once fully qualified. Temp. The turnaround coordinator is 10% above the normal pay rate. A- permit writer class has no pay increase.

c. HR-17 Plaintiff had a good standing with no attendance or active discipline on file. He had met all qualifications until mid-2022 when requisites stated he must be Console qualified. Temp. OMC Plaintiff had a good standing with no attendance or active discipline on file and met the requirements. Temp. Field Safety Specialist which had a long list of qualifications including Safety background and Emergency Response background Plaintiff had all those qualifications and more. A-permit writer class Plaintiff submitted an interest form, Console training, and Console had to submit interest or request training, to which he requested training. Temp. Turnaround coordinator Plaintiff had to sign the temporary poster and to be qualified on the

current units, he was not allowed to sign a poster (this was a secret poster), even being the most senior and most qualified with the current job preference.

## CAUSES OF ACTION

### NO. 1 – RELIGIOUS DISCRIMINATION
### TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 & TEXAS LABOR CODE CHAPTER 21 ("TCHRA")

35. Plaintiff incorporates by reference all of the foregoing allegations in each of the paragraphs above as if fully set forth herein.

36. Title VII of the Civil Rights Act of 1964 ("Title VII") and Chapter 21 of the Texas Labor Code ("TCHRA") prohibits employers from discriminating against employees based on religion, among other protected characteristics. 42 U.S.C. § 2000e-2(a)(1); TEX. LAB. CODE § 21.001 et seq. This includes not only hiring and firing decisions but also any other term or condition of employment, including failing to promote.

37. The law applies to employers with 15 or more employees, including federal, state, and local governments. 42 U.S.C. § 2000e(b). Defendants regularly employee 15 or more employees.

38. In this case, Mr. Plaskett has alleged that he was subjected to religious discrimination by his employer, Shell, and later PEMEX, in violation of Title VII and TCHRA. Specifically, Mr. Plaskett alleges that he was denied training and promotional opportunities, subjected to harassment, and treated less favorably than his colleagues because of his religion.

39. Mr. Plaskett belongs to a protected class based on his religious beliefs – Rastafarianism.

40. Mr. Plaskett sought and was qualified for the position(s) HR-17, OMC, Console Temp turnaround assignments, for which applicants were being sought. Plaintiff's qualifications are based on his seniority and his requisite training experience in the position,

41. Mr. Plaskett was rejected for each position he applied to.

42. And Defendant hired person(s) outside Plaintiff's protected class (Rastafarianism) and continued to seek applicants with Plaintiff's qualifications or significantly less qualifications.

43. These adverse actions occurred under circumstances giving rise to an inference of religious discrimination, and was perpetrated by, Obie Harris, who was known to harbor religious prejudice and had leverage and influence over each of the position(s) Plaintiff applied for to gain a promotion.

44. Given the absence of a legitimate, non-discriminatory reason, and the evidence of religious prejudice on the part of Defendant, a reasonable jury could conclude that the adverse employment actions were motivated by religious discrimination.

45. Because Defendant discriminated against Plaintiff in direct violation of Title VII and TCHRA by failing to promote Plaintiff and contributing to a hostile work environment based on race and religion, Plaintiff now suffers damages and continues to suffer damages, including but not limited to: loss of wages, loss of opportunities, emotional distress, mental suffering, just to name a few.

**NO. 2 – RACE DISCIMINATION**
**UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 &**
**TEXAS LABOR CODE CHAPTER 21 ("TCHRA")**

46. Plaintiff incorporates by reference all of the foregoing allegations in each of the paragraphs above as if fully set forth herein.

47. Title VII and TCHRA prohibits employers from discriminating against employees based on race, among other protected characteristics. 42 U.S.C. § 2000e-2(a)(1); TEX. LAB. CODE §

21.001 et seq. This includes not only hiring and firing decisions but also any other term or condition of employment, including failing to promote.

48. The law applies to employers with 15 or more employees, including federal, state, and local governments. 42 U.S.C. § 2000e(b). Defendants regularly employee 15 or more employees.

49. In this case, Mr. Plaskett has alleged that he was subjected to race discrimination by his employer, Shell, and later PEMEX, in violation of Title VII and TCHRA. Specifically, Mr. Plaskett alleges that he was denied training and promotional opportunities, subjected to harassment, and treated less favorably than his colleagues because of his race.

50. Mr. Plaskett belongs to a protected class based on his race – African-American.

51. Mr. Plaskett sought and was qualified for the position(s) HR-17, OMC, Console Temp turnaround assignments for which applicants were being sought. Plaintiff's qualifications are based on his seniority and his requisite training experience in the position,

52. Mr. Plaskett was rejected for each position he applied to.

53. And Defendant hired person(s) outside Plaintiff's protected class (African-American

54. ) and continued to seek applicants with Plaintiff's qualifications or significantly less qualifications.

55. These adverse actions occurred under circumstances giving rise to an inference of race discrimination, and was perpetrated by, Obie Harris, who was known to harbor religious prejudice and had leverage and influence over each of the position(s) Plaintiff applied for to gain a promotion.

56. Given the absence of a legitimate, non-discriminatory reason, and the evidence of racial prejudice on the part of Defendant, a reasonable jury could conclude that the adverse employment actions were motivated by race discrimination.

57. Because Defendant discriminated against Plaintiff in direct violation of Title VII and TCHRA by failing to promote Plaintiff and contributing to a hostile work environment based on race and religion, Plaintiff now suffers damages and continues to suffer damages, including but not limited to: loss of wages, loss of opportunities, emotional distress, mental suffering, just to name a few.

**NO. 3 – RETALIATION**
**UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 &**
**TEXAS LABOR CODE CHAPTER 21 ("TCHRA")**

58. Plaintiff incorporates by reference all of the foregoing allegations in each of the paragraphs above as if fully set forth herein.

59. Title VII and TCHRA prohibits employers from retaliating against employees for opposing discriminatory practices or participating in proceedings under the Act. See 42 U.S.C. § 2000e-3(a); TEX. LAB. CODE § 21.001 et seq. To establish a *prima facie* case of retaliation, Plaintiff must show that: (1) he engaged in protected activity; (2) he suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse action.

60. Mr. Plaskett engaged in protected activity by filing EEOC complaints and grievances. Mr. Plaskett filed his original EEOC charge on November 10, 2016. Thereafter, Mr. Plaskett submitted internal complaints and grievances EEOC complaint 11/07/2016, EEOC retaliation Amendment 02/10/2016, NLRB complaint 07/13/2017, Grievance 02/16/2017, Grievance

02/19/2017, Grievance 02/14/2017, Grievance 04/09/2018, Grievance 10/09/2018, Grievance 10/18/2018, Grievance 10/27/2018, Grievance 12/02/2018, Grievance 01/2021, Grievance 07/18/2022, Grievance 01/07/2024, Grievance 01/13/2024.

61. Since Plaintiff's filing of his original EEOC complaint, he suffered disparate treatment based on his race and religion, and was unable to obtain promotions, unlike his similarly situated peers, Eulalio Gonzalez (Hispanic), Ender Holland (White), Jason Bryars (White), Steven Fechner (White), Eulalio Gonzalez (Hispanic), Rosita Johnson (Hispanic), Abraham Juju (Arabic), Miguel Herrera (Hispanic), and Mario Rivera (Hispanic). Plaintiff suffered adverse employment actions, including reassignment to a different department and denial of multiple promotional opportunities.

62. There is a causal connection between his complaints and the adverse actions, as evidenced by the numerous of incidents occurred after Mr. Plaskett applied for promotion(s), and these instances of discrimination and disparate treatment occurred during the time period in which he applied for these promotions and increase in pay.

63. Given the absence of a legitimate, non-discriminatory reason, and the evidence of retaliatory motives for failing to promote Plaintiff for engaging in protected activity, a reasonable jury could conclude that Plaintiff would have been promoted to each position he sought but for his internal complaints, grievances, and EEOC charges. The decisionmakers, including Harris and Castiglione, had actual knowledge of Plaintiff's prior complaints and EEOC charge when Defendant rejected Plaintiff's promotion opportunities and was switched to Chemicals Department as a direct result.

64. Because Defendant retaliated against Plaintiff in direct violation of Title VII and TCHRA by failing to promote Plaintiff and contributing to a hostile work environment based on race and religion, Plaintiff now suffers damages and continues to suffer damages, including but not limited to: loss of wages, loss of opportunities, emotional distress, mental suffering, just to name a few.

### NO. 4 – HOSTILE WORK ENVIROMENT
### UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
### TEXAS LABOR CODE CHAPTER 21 ("TCHRA")

65. Plaintiff incorporates by reference all of the foregoing allegations in each of the paragraphs above as if fully set forth herein.

66. A hostile work environment claim under Title VII and TCHRA requires a plaintiff to demonstrate that: (1) he belongs to a protected group; (2) he was subjected to unwelcome harassment; (3) the harassment was based on a protected characteristic; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take prompt remedial action.

67. Mr. Plaskett belongs to a protected group, having faced discrimination and harassment based on his race and religion.

68. The unwelcome harassment is evident from the numerous instances of Mr. Harris thwarting his professional advancement, using offensive language, and instigating an HR investigation against him. This harassment affected Mr. Plaskett's employment, as it inhibited his

career development, caused him emotional distress, and led him to seek psychological counseling.

69. Moreover, both Shell and PEMEX knew or should have known of the harassment. Mr. Plaskett filed multiple grievances and an EEOC complaint, along with an NLRB complaint, and he disclosed the harassment during an HR investigation. Despite this, the companies failed to take prompt remedial action. While Mr. Harris was eventually removed from Mr. Plaskett's department, this action was insufficient given the gravity of the allegations and the persistent hostile work environment.

70. Mr. Plaskett alleges a pattern of discriminatory and harassing behavior that was both severe and pervasive, given that he was targeted based on his race and religion and intentionally denied multiple promotions that he was qualified for motivated in part based on Mr. Plaskett's race and religion; thereby creating a hostile work environment.

71. Because Defendant created a severe and pervasive hostile work environment against Plaintiff in direct violation of Title VII and TCHRA by failing to promote Plaintiff and contributing to a hostile work environment based on race and religion by failing to remedy the situation or take prompt action. In fact, Defendant's first action after Plaintiff's EEOC charge resulted in a demotion. Plaintiff now suffers damages and continues to suffer damages, including but not limited to: loss of wages, loss of opportunities, emotional distress, mental suffering, just to name a few.

## VI.     DAMAGES

72. Plaintiff sustained the following damages as a result of the actions and/or omissions of Defendants described hereinabove:

    a.    Back pay from the date of his non-selection to present, with interest;

    b.    Front pay in an amount the Court deems equitable and just to make Plaintiff whole;

    c.    All reasonable and necessary attorney's fees incurred by or on behalf of Plaintiff;

    d.    All reasonable and necessary costs incurred in pursuit of this suit;

    e.    Compensatory damages and emotional pain;

    f.    Exemplary/Punitive Damages;

    g.    Pre- and post-judgment interest;

    h.    Mental anguish in the past; and

    i.    Mental anguish in the future.

## VII.   JURY DEMAND

73. Plaintiff demands a trial by jury and has tendered the appropriate fee with this Original Complaint.

## VIII.   PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff, Ronald Augustine Plaskett, respectfully prays that Defendants, Pemex Incorporated and Shell LLC, be cited to appear and answer herein and that upon a final hearing of the cause, judgment be entered for Plaintiff against Defendant for damages in an amount within the jurisdictional limits of the Court; together with interest as allowed by law; costs of court; and such other and further relief to which

the Plaintiff may be justly entitled at law or in equity.

                                                      Respectfully submitted,



**Alfonso Kennard, Jr.**
Texas Bar No. 24036888
**Eddie Hodges Jr.**
Texas Bar No. 24116523
Kennard Law, P.C.
5120 Woodway Dr., Suite 10010
Houston, Texas 77056
Main: 713.742.0900
Fax: 832.558.9412
Email: filings@kennardlaw.com
Email: alfonso.kennard@kennardlaw.com
Email: eddie.hodges@kennardlaw.com
**ATTORNEYS FOR PLAINTIFF**