United States District Court
Southern District of Texas
**ENTERED**
December 31, 2024
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| RONALD AUGUSTINE PLASKETT, § § § | |
| Plaintiff, § | |
| v.  § | CIVIL ACTION NO. 24-1433 |
| § | |
| DEER PARK REFINING L.P., § § | |
| Defendant. § § § | |

**MEMORANDUM AND OPINION**

Ronald Plaskett sues his former employer, Deer Park Refining L.P., alleging racial and religious discrimination and retaliation. Plaskett, an African-American man who practices Rastafarianism, has worked at Deer Park Refining since 2016. He continues to be employed there. Plaskett alleges that he was denied training and promotional opportunities, subjected to harassment, and treated less favorably than his colleagues because of his race and religion. He brings claims under the Texas Labor Code Chapter 21 ("TCHRA") and Title VII for religious discrimination, race discrimination, retaliation and hostile work environment.

Deer Park has moved to dismiss Plaskett's claims under Federal Rule of Civil Procedure 12(b)(6). (Docket Entry No. 30). Deer Park asserts that Plaskett's claims under both the TCHRA and Title VII are time-barred. (*Id.*). Deer Park also argues that Plaskett's allegations fail to state a claim upon which relief can be granted. (*Id.*).

Based on the pleadings, the motion, and the applicable law, the court grants the motion to dismiss Mr. Plaskett's claims. The reasons for this ruling are explained below.

**I.     Background**

From 2016 to February 2023, a Caucasian man named Obie Harris supervised Plaskett's work at Deer Park. (*Id*. at 4). During this time, Plaskett alleges that Harris "persistently thwarted his professional advancement, exposing him to discrimination, harassment and public indignity." (*Id*. at 5). Plaskett alleges that on November 10, 2016, he "filed his first original EEOC complaint." (*Id*.). He asserts that the response from Deer Park to his complaint was "punitive": Plaskett was reassigned from a role in the Distilling Department to the Chemical Department, "without justification." (*Id*.). He alleges that a manager at Deer Park, Andy Castiglione, told him that "[s]ince you filed the EEOC charge, I'm going to move you to the Chemical Dep[artment] because they need a good operator." (*Id*. at 6). He also alleges that he was not given an additional $1.00 per hour pay increase despite having the qualifications for this increase. (*Id*. at 5). Because Plaskett's reassignment violated the terms of a collective bargaining agreement to which Deer Park was subject, he alleges that he filed "a grievance." (*Id*. at 6).

Plaskett asserts that in 2019, he attempted to return to the Distilling Department, but his efforts were "thwarted" by Harris, Castiglione, and other management-level employees in the Chemicals Department. (*Id*.). Plaskett asserts that "this again was another form of retaliation." (*Id*.). A Caucasian individual was instead assigned to the role that Plaskett sought. (*Id*.). Plaskett asserts that this individual had less experience than he did. (*Id*.).

Plaskett also alleges that between December 2018 and January 2019, he "completed a series of rigorous job trainings and assignments with notable efficiency." (*Id*. at 7). He approached management, including Harris, to request a pay increase, without success. (*Id*.). Plaskett alleges that a colleague "from the same hiring cohort and of Caucasian descent" who "does not identify as Rastafarian" was given the pay increase after she completed similar trainings. (*Id*.). Plaskett also alleges that "other employees in the same position" who were also supervised by Harris and

2

belong to "White, Hispanic and Arab collectives" received pay increases. (*Id*.). Plaskett filed another grievance in 2020 after Deer Park refused to increase his pay. (*Id*.).

Plaskett alleges that since 2019, he has been "persistently overlooked" for training opportunities. (*Id*.). He alleges that coworkers with less seniority and "lack of success" in completing the training he sought to obtain were "preferentially given chances that were withheld from him." (*Id*. at 7-8). Plaskett also alleges that he was not promoted "despite his qualifications and training endeavors." (*Id*. at 8). He alleges that Harris instead chose to promote other colleagues, "ranging in ethnic backgrounds," who did not identify as Rastafarians. (*Id*.).

Plaskett also alleges an incident on July 18, 2022 when Harris publicly disparaged him during a staff assembly. (*Id*. at 8). During the assembly, Harris used profanity and mocked Plaskett for complaining about the cleanliness of a control room at the refinery. (*Id*.). Plaskett's and Harris's manager, Steve Jones, was allegedly present when this occurred. (*Id*.). Plaskett alleges that Jones failed to take "immediate corrective action" related to this incident. (*Id*. at 8-9). Plaskett alleges that he filed a grievance with Deer Park because of Harris's disparagement. (*Id*. at 9).

Plaskett also alleges that Harris sent an email to Plaskett commending another colleague on his promotion. (*Id*. at 9). Plaskett responded to this email. (*Id*.). Deer Park HR investigated Harris's email and Plaskett's response. (*Id*.). During the investigation, Plaskett "courageously disclosed the prolonged harassment, discrimination and religious prejudice" that he had been subject to by Harris. (*Id*.). He also complained to HR about "banter and memes that colleagues circulated through his work area" targeted at him. (*Id*.). In February 2023, Plaskett was informed that Harris had been removed from Plaskett's department and transferred to another department at

Deer Park. (*Id*.). Plaskett alleges that since Harris was transferred, he has "observed a significant improvement in the workplace environment." (*Id*. at 10).

Plaskett alleges that after Harris's departure, he experienced an additional discriminatory act. (*Id*.). Plaskett alleges that he was "passed over for an assistant role pertinent to the impending Turnaround in his department." (*Id*.). This assignment, which he refers to as the "Temporary Turnaround assignment," came with a 10% increase in pay. (*Id*. at 10-11). Plaskett alleges that he was qualified for the Temporary Turnaround Assignment, but a colleague of Plaskett's, who is Caucasian and not Rastafarian, received the assignment. (*Id*.). Plaskett asserts that Harris, who has a position "within the Turnaround Planning Department" may have ensured that Plaskett was not given the role he sought. (*Id*. at 11).

When Plaskett filed his First Amended Complaint, he asserted that Harris had been reassigned to the Distilling Department. (*Id*.). As a result, Plaskett asserts that he will once again be "positioned to report to Mr. Harris and follow his directives." (*Id*.).

On January 5, 2024, Plaskett filed a Charge of Discrimination with the EEOC and the Texas Workforce Commission against Deer Park, alleging racial and religious discrimination, hostile work environment, and retaliation. (*Id*. ¶ 11). The EEOC issued a right to sue letter on January 30, 2024. (*Id*. ¶ 12).

## II.  The Legal Standard

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678

4

(2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

To withstand a Rule 12(b)(6) motion, a complaint must include "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Lincoln v. Turner*, 874 F.3d 833, 839 (5th Cir. 2017) (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (alteration in original) (quoting *Twombly*, 550 U.S. at 557). "[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Twombly*, 550 U.S. at 558). "[A] motion to dismiss for failure to comply with Title VII's statutory filing period, like other statutes of limitations defenses, is properly decided under Fed. R. Civ. P. 12(b)(6)." *Boone v. Union Carbide Corp.*, 205 F. Supp.2d 689 (S.D. Tex. 2002).

**III.   Analysis**

Plaskett brings claims under both Title VII and the TCHRA. "The Supreme Court of Texas has 'consistently held' that cases interpreting Title VII should guide courts' interpretation of the TCHRA." *Sanders v. Regions Bank*, 2024 WL 2159961, at *4 (S.D. Tex. May 14, 2024). The court thus analyzes Plaskett's claims under both Title VII and the TCHRA together.

5

"To bring a suit under Title VII … a complainant must file a charge of discrimination with the EEOC to exhaust his administrative remedies." *Melgar v. T.B. Butler Publ'g Co., Inc.*, 931 F.3d 375, 378 (5th Cir. 2019). "In Texas, a person claiming unlawful discrimination or retaliation must file a charge of discrimination with the EEOC within 300 days 'after the alleged unlawful employment practice occurred.'" *Burgess v. Texas Children's Hosp.*, 2018 WL 6266906, at *4 (S.D. Tex. Nov. 30, 2018) (quoting *EEOC v. WC&M Enters., Inc.*, 496 F.3d 393, 398 (5th Cir. 2007)). Claims under the TCHRA must be brought within 180 days after the alleged unlawful employment practice occurred, so any claims that are time-barred under Title VII's statute of limitations are also time-barred under the TCHRA. *See* Tex. Lab. Code Ann. § 21.202(a).

A discrimination claim not brought within the filing deadline is time-barred. *Mack v. John L. Wortham & Son, L.P.*, 541 F. App'x 348, 355 (5th Cir. 2013) (per curiam). Deer Park argues that any of Plaskett's allegations of racial or religious discrimination occurring between 2016 and 2022 are time-barred. (Docket Entry No. 30 at 7). Plaskett filed his charge of discrimination with the EEOC on January 5, 2024, so Deer Park asserts that any alleged acts occurring on or before March 23, 2023 fall outside of the 300-day window prescribed by Title VII. (*Id*.). Deer Park asserts that this includes the following allegations, all of which Plaskett allege occurred before March 5, 2023: (1) the grievance that Plaskett filed in 2016; (2) his reassignment to the Chemical Department; (3) Harris "thwarting" Plaskett's attempted return to the Distilling Department in 2019; (4) the denial of Plaskett's requested pay increase in 2019 and the grievance that Plaskett filed because of it in 2020; (5) any alleged failures to promote Plaskett between 2019 and May 5, 2023; (6) the incident where Harris disparaged Plaskett at a team meeting, and the grievance that Plaskett filed after this incident; (7) the incident where Harris sent Plaskett an email about another

6

colleague's promotion; and (8) the allegations of offensive "banter and memes" that were circulated before March 5, 2023.

Plaskett asserts that these allegations of discrimination are not time-barred because "the Fifth Circuit has found that the continuing violation doctrine may apply to all Title VII claims." (Docket Entry No. 37 at 3). Plaskett cites *Messer v. Meno*, 130 F.3d 130 (5th Cir. 1997). But more recent Fifth Circuit precedent clearly establishes that "[c]laims alleging discrete acts are not subject to the continuing violation doctrine; hostile workplace claims are." *Heath v. Board of Supervisors for the Southern University and Agricultural and Mechanical College*, 850 F.3d 731, 737 (5th Cir. 2017). "A discrete act consists of an unlawful practice that 'occurred' on the day it 'happened,' which includes, for example, 'termination, failure to promote, denial of transfer, or refusal to hire.'" *Mickens v. Moran Foods*, 2017 WL 4269680, at *2 (E.D. La. Sept. 26, 2017) (citing reference omitted).

Plaskett's complaint alleges a number of discrete acts: failures to promote, a transfer to another department, and a failure to increase his pay. "[T]he continuing violation doctrine cannot be used to connect acts of discrete discrimination or retaliation, thereby extending the deadline in which to file a complaint based on that conduct because a 'discrete retaliatory or discriminatory act occurred on the day that it 'happened.'" *Lucenio v. Houston Indep. Sch. Dist.*, 2022 WL 658838, at *11 (S.D. Tex. Feb. 16, 2022) (quoting *Frank v. Xerox Corp.*, 347 F.3d 130, 136 (5th Cir. 2003)). The continuing violation doctrine does not save Plaskett's allegations from before March 3, 2023, because he alleges discrete discriminatory acts.

Even assuming that Plaskett alleges a series of related violations, and not discrete discriminatory acts, he fails to state a claim for a hostile work environment. To state a hostile-work-environment claim, a plaintiff must plead facts that could show:

7

> (1) he belongs to a protected group; (2) he was subjected to unwelcome harassment; (3) the harassment complained of was based on [membership in a protected group]; (4) the harassment complained of affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action.

*Daywalker v. Univ. of Texas Med. Branch at Galveston*, 641 F. Supp. 3d 362 (S.D. Tex. 2022) (alterations adopted) (citing *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009)). The harassment must be "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment," and it cannot be "measured in isolation." *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002) (citations omitted). "A hostile work environment exists when the workplace is 'permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment.'" *Johnson v. Halstead*, 916 F.3d 410 (5th Cir. 2019) (*citing Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993)).

In addition to the allegations that Deer Park failed to promote Plaskett or raise his pay, or that Plaskett was transferred to another department, Plaskett has alleged that he was "muted" in Zoom meetings, subject to "memes and banter" that he found offensive, and publicly disparaged by Harris at a team meeting.  But Plaskett does not allege that these incidents of "harassment" had either any overtly racial or religious character.  Without more, Plaskett's allegations amount only to "discourtesy," "rudeness," "offhand comments," and "isolated incidents," all of which the Fifth Circuit has found do not amount to a hostile work environment.  *Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 264 (5th Cir. 1999) (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 118 S. Ct. 2275, 141 L. Ed. 2d 662 (1998)).

Equitable tolling may serve to extend the filing deadline when a plaintiff alleging discrimination under Title VII fails to file their charge within the 300-day window. *See Zipes v.*

*Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982) ("Filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling."). A plaintiff bears the burden to justify equitable tolling, which courts apply "sparingly." *Granger v. Aaron's, Inc.* 636 F.3d 708, 712 (5th Cir. 2011) (quoting *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002)). Under Fifth Circuit precedent, three grounds may support equitable tolling: (1) the pendency of a suit between the same parties in the wrong forum; (2) the plaintiff's unawareness of the facts giving rise to the claim because the defendant intentionally concealed them; and (3) the EEOC's misleading the plaintiff about the nature of the rights. *Granger*, 636 F.3d at 712. Plaskett fails to allege facts that would allow the court to infer that any of these three grounds apply.

Deer Park asserts, and the court agrees, that the only allegation that Plaskett alleges which is not clearly barred by the statute of limitations is Deer Park's failure to promote or otherwise assign the Temporary Turnaround position to Plaskett. (Docket Entry No. 30 at 18). Plaskett alleges that this occurred after Harris's reassignment to another group in February 2023, but he does not allege whether this occurred before or after March 3, 2023. Plaskett asserts that he was eligible and qualified for the position, but that a less-qualified Caucasian individual who does not practice Rastafarianism, John Brooks Pearson, was selected instead. (Docket Entry No. 13 at 11-12). Plaskett claims that Deer Park did not follow its normal hiring procedures in hiring Pearson and failed to allow Plaskett the opportunity to fully assert his qualifications for the Temporary Turnaround assignment. (*Id.*). Plaskett also alleges that Harris may have been involved in the failure to promote him. (*Id.*).

The court analyzes this as a "disparate treatment" claim for discrimination. "When an individual infers discrimination from an employer's failure to promote him, courts apply a modified version of the burden-shifting analysis articulated by the Supreme Court in *McDonnell Douglas*." *Brooks v. Firestone Polymers, LLC*, 70 F. Supp. 3d 816, 851 (E.D. Tex. 2014) (alterations adopted) (citing *Scales v. Slater*, 181 F.3d 703, 709 (5th Cir. 1999). For a prima facie case for failure to promote using circumstantial evidence, a plaintiff must plausibly allege that "(1) he was not promoted, (2) he was qualified for the position he sought, (3) he fell within a protected class at the time of the failure to promote, and (4) the defendant either gave the promotion to someone outside of that protected class or otherwise failed to promote the plaintiff because of his race [or religion]." *Autry v. Fort Bend Indep. Sch. Dist.*, 704 F.3d 344, 346-47 (5th Cir. 2013). Plaskett has stated a prima facie case for a failure to promote. He alleges that he was not promoted to the Temporary Turnaround position, which came with higher pay, that he was qualified for the position, that he was a member of two protected classes at the time of the position, and that someone outside of his protected classes received the promotion.

To the extent that Plaskett relies on the failure to promote him to the Temporary Turnaround position for a claim of retaliation, he must plausibly allege the following: (1) he engaged in a protected activity; (2) he was subjected to an adverse employment action; and (3) there is a causal link between the protected activity and the adverse employment action. *Long v. Eastfield Coll.,* 88 F.3d 300, 304 (5th Cir. 1996). As stated, Plaskett's claim fails on the first element. Deer Park asserts, and the court agrees, that Plaskett alleges a series of protected activities occurring from 2016 to 2022, and then again in 2024. (Docket Entry No. 30 at 21). If Plaskett alleges that he was denied the Temporary Turnaround assignment between February and March

2023, the protected activities in 2022 or 2024 are either too early or too late to give rise to a claim for retaliation.

Plaskett's claim for religiously or racially motivated disparate treatment for failing to promote or otherwise assign him to the Temporary Turnaround position is the only plausible claim he asserts. Because he fails to allege a specific date on which Deer Park failed to promote him, he is granted leave to amend only as to those allegations relating to the Temporary Turnaround position. He must amend his complaint to specifically allege the date on which this failure to promote occurred, no later than February 1, 2025, or else this claim will be dismissed with prejudice.

### IV.   Conclusion

Deer Park's motion to dismiss is granted. (Docket Entry No. 30). All of Plaskett's claims except his claim alleging disparate treatment for the failure to promote him to the Temporary Turnaround position are dismissed, with prejudice, as amendment would be futile. Plaskett must amend his disparate treatment for the failure to promote him to the Temporary Turnaround position to clearly allege a date when this occurred, no later than February 1, 2025.

SIGNED on December 31, 2024, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge